UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                            )
JAMES DORSEY,                                )
                                                            )
                    Plaintiff,                       )
                                                            )
          v.                                               )          C. A. No. 19-cv-191(RMC)
                                                            )
DISTRICT OF COLUMBIA, *et al.*,      )
                                                            )
                    Defendants.                   )
_____ )

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendants District of Columbia (the District), Officer Jonathan Lauderdale, and Officer Gregory Schiffer through undersigned counsel, hereby move this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' complaint for failure to state a claim upon which relief may be granted.  In the alternative, the District moves this Honorable Court, pursuant to Fed. R. Civ. P. 56(a) for summary judgment.  Plaintiff's complaint is partially barred by *res judicata*. The statute of limitations on Plaintiff's complaint has run.  Plaintiff's complaint is not proper under *Heck v. Humphrey*, 512 U.S. 477 (1994).  Plaintiff's complaint fails to state a constitutional violation and, therefore, cannot support the *Monell* claim against the District.  Finally, Plaintiff has failed to plead enough facts to show individual officers violated his constitutional rights in failing to knock and announce and seizing his electronic devices.  Of the individually named officers, only Jonathan Lauderdale and Gregory Schiffer have been served, but the failure to state a constitutional violation would apply to the claims asserted against all the officers, including the ones that have not been served.

A Statement of Material Facts Not in Dispute, a Memorandum of Points and Authorities, and a Proposed Order are attached hereto.

Because this motion seeks dispositive relief, the District was not required to confer with Plaintiffs pursuant to LCvR 7(m).

Dated: March 8, 2019      Respectfully Submitted,

            KARL A. RACINE
            Attorney General for the District of Columbia

            GEORGE C. VALENTINE
            Deputy Attorney General
            Civil Litigation Division

            MICHAEL K. ADDO [1008971]
            Chief, Civil Litigation Division, Section IV

            /s/David A. Jackson_____
            DAVID A. JACKSON [471535]
            Assistant Attorney General
            Suite 630 South
            441 Fourth Street, NW
            Washington, D.C.  20001
            (202) 724-6618
            (202) 741-8999 (fax)
            davida.jackson@dc.gov

            /s/ *John J. Bardo*_____
            JOHN J. BARDO*
            Assistant Attorney General
            441 4th Street, NW, Suite 630 South
            Washington, DC  20001
            202-724-6534
            John.Bardo@dc.gov

            *Admitted to practice only in the Commonwealth of Virginia.  Practicing in the District of Columbia under the direct supervision of Michael Addo, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                              |   |                        |
|------------------------------|---|------------------------|
| JAMES DORSEY,                | ) |                        |
|                              | ) |                        |
| Plaintiff,                   | ) |                        |
|                              | ) |                        |
| v.                           | ) | C. A. No. 19-cv-191 (RMC) |
|                              | ) |                        |
| DISTRICT OF COLUMBIA, *et al*., | ) |                     |
|                              | ) |                        |
| Defendants.                  | ) |                        |

_____ )

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.  Police obtained a warrant to search 4701 Alabama Avenue S.E. – Apartment 31 to investigate an alleged theft of purses by Francis Taylor.  Pl.'s Compl. ¶ 10.

2.  Police believed they would find evidence of the purse theft at 4701 Alabama Avenue S.E. – Apartment 31, because their records indicated Mr. Taylor, the suspect, lived there. Affidavit in Support of an Application for a Search Warrant at 5, attached as Exhibit C.

3.  Police executed the warrant to search 4701 Alabama Avenue S.E. – Apartment 31 on June 7, 2013.  *Id.*

4.  During the search, police found an unregistered firearm and arrested Plaintiff for possession of an unregistered firearm.  Pl.'s Compl. ¶¶ 13-14; United States v. James Dorsey, 2013 CF3 009618 Sup. Ct. Dkt., attached as Exhibit c.

5.  Plaintiff was convicted and sentenced to three years in prison for Unlawful Possession of a Firearm, Unlawful Possession of ammunition, and Possession of an unregistered firearm.  *Id.*; United States v. James J. Dorsey, Case No. 13 CF3 009678, Sentence of the Court, attached as Exhibit d.

6.   Plaintiff was released from prison on July 17, 2017.  Bureau of Prisons Inmate Locator, James J. Dorsey, Register No. 58251-007, attached as Exhibit e.

7.   On September 8, 2015, Plaintiff's wife, Nikia Dorsey, and her two children brought a complaint against the District and many of the same MPD officers alleging violation of their Fourth and Fifth Amendment rights arising from the same events that Plaintiff alleges in his complaint.  Pl.'s Am. Compl., ECF No. 12, attached as Exhibit A.

8.   The District moved to dismiss, and this court granted the District's motion in part finding officers could reasonably rely on the warrant and had probable cause to search the house.

*Dorsey v. District of Columbia*, 234 F. Supp. 3d 1, 10 (D.D.C. 2017);, *id.,* at 9.

Respectfully Submitted,


KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

/s/David A. Jackson _____
DAVID A. JACKSON [471535]
Assistant Attorney General
Suite 630 South
441 Fourth Street, NW
Washington, D.C.  20001
(202) 724-6618
(202) 741-8999 (fax)
davida.jackson@dc.gov

/s/ *John J. Bardo* _____
JOHN J. BARDO*
Assistant Attorney General
441 4th Street, NW, Suite 630 South
Washington, DC  20001
202-724-6534

John.Bardo@dc.gov

*Admitted to practice only in the Commonwealth of Virginia.  Practicing in the District of Columbia under the direct supervision of Michael Addo, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JAMES DORSEY,                           )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )     C. A. No. 19-cv-191
                                        )
DISTRICT OF COLUMBIA, *et al.*,         )
                                        )
            Defendants.                 )
_____ )

### THE DISTRICT OF COLUMBIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendants the District of Columbia (the District), Officer Jonathan Lauderdale, and Officer Gregory Schiffer, by and through undersigned counsel, hereby moves this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing this lawsuit. Alternatively, the District moves this Honorable Court, pursuant to Fed. R. Civ. P. 56(a) for summary judgment. As fully explained below, the complaint fails to state a claim upon which relief can be granted because the claim is partially barred by res judicata, the statute of limitations has expired, the claim is improper under *Heck v. Humphrey*, 512 U.S. 477 (1994), the claim fails to state a constitutional violation and, therefore, cannot support the *Monell* claim against the District, and the claim does not state which officers failed to knock and announce and which officers seized Plaintiff's electronic devices. Of the individually named officers, only Lauderdale and Schiffer have been served, but the failure to state a constitutional violation would apply to the claims asserted against all the officers, including the ones that have not been served.

**Nature of the Case**

Plaintiff James Dorsey brings this lawsuit against the District and Metropolitan Police Department (MPD) Lt. Michael Pulliam; Detectives Anthony T. Campanale III and Nicholas Smith; and Officers William Dempster, Jonathan Lauderdale, Gregory Shiffer, Emma B. Deoleo, and Brock Vigil under the Fourth Amendments to the United States Constitution.[1] Pl.'s Compl. ¶¶ 28-30.

The gravamen of Plaintiffs' complaint is the following: that Officer Dempster's application for a search warrant lacked sufficient facts to establish probable cause, *id.* ¶ 10; that the warrant application did not contain "any facts that would create a likelihood of finding evidence of any crime in the plaintiff's home," *id*; that no facts in the warrant application suggested the phones and computer seized from the plaintiff would contain evidence of a crime, *id.* ¶ 11; that the violation of Plaintiffs' rights was caused by an MPD policy, custom and practice of failing to train and supervise police officers as to the proper way to write search warrant affidavits, *id.* ¶¶ 28, 30; that MPD "has established a pattern and practice, and policy of training its officer to include in search warrants statements of training and experience that are unsubstantiated, vague, insufficient to substitute for actual evidence, false, and misleading," *id.* ¶ 28; that "MPD has established a pattern and practice of training officers to use statements of training and experience about the habits of criminal as a purported substitute for evidence of police investigation into any evidentiary link to a particular residence," *id.*; that "although [MPD] are aware of the factual and legal flaws in the statements, they continue to instruct officers to obtain search warrants raids based on training and experience based statements," *id.*; that MPD has "failed to properly train and or discipline officers who repeatedly prepare and execute legally invalid search warrants, *id.*; that officers failed

---

[1] At this time, undersigned counsel only represents the District, and the two officers that have been served: Officers Lauderdale and Shiffer.

to knock and announce their presence before entering Plaintiffs' home, *id.* ¶ 29; and that the seizure of Plaintiff's property was unnecessary, unreasonable and the officers' conduct shocked the conscience and violated the Fourth Amendment, *id.* ¶¶ 28-30.

### Allegations in the Complaint

Plaintiff alleges that on or about June 7, 2013 MPD officers executed a warrant to search his residence at 4701 Alabama Avenue, SE to investigate a theft of nine purses from a store in Leesburg, Virginia.  Pl.'s Compl. ¶ 10.  Plaintiff's cousin, Francis Taylor, was a suspect in the theft.  *Id.*  Plaintiff alleges the warrant application did not have any facts that would create a likelihood that the officers would find evidence of any crime in Plaintiff's home.  *Id.*  Plaintiff also alleges officers knew Mr. Taylor did not reside at 4701 Alabama Avenue, SE.  *Id.* ¶ 30.

Officers allegedly failed to announce their presence and broke down the door when they arrived at Plaintiff's residence.  *Id.* ¶ 29.  When the officers arrived, Plaintiff and his family were on the back outdoor balcony, but upon hearing the officers, Plaintiff entered the kitchen.  *Id.* ¶ 12.  Plaintiff was allegedly "ordered to the ground and handcuffed."  *Id.* ¶ 13.  Police allegedly also handcuffed everyone else in the apartment including "two adults, a juvenile male, and a female child."  *Id.*  During the search, police found a gun in the kitchen cabinet.  *Id.*  Police seized the gun along with four cellphones and a computer.  *Id.* ¶ 11.  Defendant Officer Dempster allegedly believed the cellphones and computer would contain evidence of the theft.  *Id.* ¶ 10.  Plaintiff alleges police invaded his privacy when they seized the electronic devices because the devices "contained his personal and intimate information," and that "this unreasonable, wanton and reckless, seizure and searches reflect a pattern and practice of MPD officers in several hundreds of similar search warrant raids."  *Id.* ¶ 30.

Plaintiff was arrested and charged with possession of an unregistered firearm and ammunition.  *Id.* ¶ 9.  Plaintiff was convicted and sentenced to three years in prison on April 24, 2016.  United States v. James J. Dorsey, Case No. 13 CF3 009678, Sentence of the Court, attached as Exhibit E.  Plaintiff was released from prison on July 17, 2017.  Bureau of Prisons Inmate Locator, James J. Dorsey, Register No. 58251-007, attached as Exhibit e.

**The Previous Case**

On September 8, 2015, Plaintiff's wife, Nika Dorsey, and her two children, brought a complaint against the District and many of the same MPD officers alleging violation of their Fourth and Fifth Amendment rights arising from the same events that Plaintiff alleges in his complaint. Pl.'s Am. Compl., ECF No. 12, attached as Exhibit A.  The District moved to dismiss, and this court granted the District's motion in part finding officers could reasonably rely on the warrant, *Dorsey v. District of Columbia*, 234 F. Supp. 3d 1, 10 (D.D.C. 2017); and officers had probable cause to search the house, *id.,* at 9.

**The Affidavit in Support of an Application for A Search Warrant**

Four days prior to the search of Plaintiffs' residence, Officer Dempster swore out an application in support of a search warrant.  *See* Affidavit in Support of an Application for a Search Warrant, at 5, attached as Exhibit b.  The affidavit was signed by an Assistant United States Attorney.  *Id.* The affidavit sought a warrant authorizing the search of Francis Taylor's residence located at 4701 Alabama Avenue, Apartment 31, Southwest, Washington DC, 20019.  *Id.*, at 1.

The affidavit describes the investigation underlying the application for the search warrant. On June 5, 2013, MPD officers were patrolling near the 1500 block of Kenilworth Avenue, Northeast, Washington, DC when they attempted to conduct a traffic stop on a dark BMW sedan with tinted windows bearing District of Columbia registration EE0674.  *Id.*  The driver of the

BMW sped away when the police officers attempted to stop the car by activating the police emergency equipment - siren and police lights.  *Id.*  Subsequently, the police officers contacted Officer Dempster to obtain information about the BMW sedan.

While Officer Dempster was checking into information regarding the BMW, he learned that the same vehicle was suspected of being involved in a theft that occurred in Leesburg, Virginia only two days prior.  *Id.*  Officer Dempster obtained information from the Leesburg police that on June 3, 2013, two individuals had grabbed nine handbags (valued at $8771.00) from a Burberry store and without purchasing the handbags, ran out the store and fled in a dark BMW sedan bearing District of Columbia registration EE0674.  *Id.*

Upon further investigation, Officer Dempster learned that the BMW was titled to Francis Taylor and another person, *Id.*, at 2, and was registered at 4701 Alabama Avenue, Southeast Washington, DC, Apartment # 31—Plaintiff's address.  *Id.*  Officer Dempster's investigation also revealed that the BMW's insurance policy was in Mr. Taylor's name and that Mr. Taylor was the primary driver and co-owner.  *Id.*  Mr. Taylor met the suspect description provided by the witnesses of the Leesburg theft.  *Id.*

The affidavit then describes the probable cause underlying the application for a search warrant.  Based on thirteen plus years of experience Officer Dempster knew the following: "that individuals who commit thefts will store the stolen property at their residences or in vehicles which they have access and control until such time they can pawn, sell, trade or use the item to their own benefit," and that the clothing worn by suspects and seen by witnesses and on video surveillance during the commission of theft crimes could also be found at a suspect's residences or in their vehicles.  *Id.*, at 2.

Based on the facts revealed during the investigation, Officer Dempster requested that a warrant be issued authorizing the search of Apartment # 31 at 4701 Alabama Avenue, S.E. *Id*., at 4. On June 7, 2013, based on the application from Officer Dempster, a Judge in the Superior Court of the District of Columbia signed a warrant that described the place to be searched and the items to be seized. *Id*., at 5. The warrant was executed that same day, and MPD seized a laptop computer, four cell phones, and a revolver. *Id*.

## Legal Standard

### I.   Motion to Dismiss

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). In *Ashcroft v. Iqbal*, the Supreme Court set forth a "two-pronged approach" that a court may utilize when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While a court generally must consider a plaintiff's factual allegations as true, the court may first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Thus, the basic pleading standards "demand [] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).

Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Applying these standards to the instant case, the Court should dismiss Plaintiffs' complaint.

II.     **Summary Judgment**

Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A moving party is 'entitled to judgment as a matter of law' against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986)).

Plaintiff must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see Cater v. Greenspan*, 304 F. Supp. 2d 13 (D.D.C. 2004).  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Applying these standards to the instant case, the Court should grant summary judgment on behalf of the District.

**Argument**

I.     **The statute of limitations on Plaintiff's complaint has run.**

In determining the statute of limitations for constitutional claims, courts apply the "residual or general personal injury statute of limitations" from the state that allegedly violated the plaintiff's constitutional rights.  *Owens v. Okure*, 488 U.S. 235, 236 (1989).  In the District, the residual statute of limitations is three years.  D.C. Code § 12-301(8).  However, the statute of limitations tolls if the plaintiff is disabled, and imprisonment qualifies as a disability.  *Id*., § 12-302(a).  Once the disability is removed, the plaintiff has the balance of the time within the statute of limitations to bring the claim.  *Id*; *Hunt v. Bittman*, 482 F. Supp. 1017, 1025-26 (D.C. Cir. 1980); *Simpson v.*

*D.C. Metro. Police Dep't*, 789 F. Supp. 5, 8 (D.D.C. 1992).  For an action that accrues during an arrest, the statute of limitations tolls "during the time of any imprisonment resulting from that arrest.  *Fernandors v. District of Columbia*, 382 F. Supp. 2d 63, 68 (D.D.C. 2005).  Plaintiff must be physically in prison for the statute to toll.  *See Simpson*, 789 F. Supp., at 8.

The events alleged in Plaintiff's complaint occurred on June 7, 2013, Pl.'s Compl. ¶ 12, but Plaintiff did not file his complaint until August 27, 2018.  The docket from Plaintiff's criminal case indicates he was in custody from the time of his arrest on June 7, 2013 until he was moved to a halfway house and placed on work release on July 9, 2013.  Dkt., attached as exhibit c.  On October 23, 2013, Plaintiff was released from the halfway house and placed on high intensity supervision.  *Id*.  Plaintiff was granted bond on July 1, 2014.  *Id*.  Plaintiff began his prison sentence on April 24, 2016, *id*., and was released on July 17, 2017.  Sentence of the Court, attached as Exhibit d; Bureau of Prisons Inmate Locator, James J. Dorsey, Register No. 58251-007, attached as Exhibit e.  By the time Plaintiff began his prison sentence, thirty out of the thirty-six months in the statute of limitations had already expired.[2]  Plaintiff had until February 2018 to bring this claim, but he did not file his complaint until August 27, 2018, six months after the statute of limitations expired.

## II.     **Plaintiff's Complaint as to the Search of the Home is Barred by Issue Preclusion.**

A defendant must satisfy three elements to dismiss a plaintiff's case based on issue preclusion "[A], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; [B] the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and [C] preclusion

---

[2] The thirty-month calculation assumes the court would consider Plaintiff's time in the halfway house on work release "imprisonment."  If the court believes Plaintiff's stint in the halfway house that lasted from July 9, 2013 until October 23, 2013 did not amount to "imprisonment," then thirty-three months would have passed.

in the second case must not work a basic unfairness to the party bound by the first determination."

*Martin v. DOJ*, 488 F.3d 446, 454-455 (D.C. Cir. 2007) (citing *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 2007)).  This Court should dismiss Plaintiff's claim that police violated his fourth amendment rights in executing the search warrant because of the preclusive effect of the Court's ruling on the District's motion to dismiss in Mrs. Dorsey's case.  *Dorsey*, 234 F. Supp. 3d., at. 1.  The Court already determined that "probable cause existed to support the Warrant insofar as it sought to search Apt. 31 for evidence of the purse theft or suspicious clothing." *Id.*, at 9.  The Court also found the officers could reasonably rely on the warrant.  *Id.*, at 10.  Plaintiff attempts to relitigate these questions in his own complaint.  Pl.'s Compl. ¶¶ 28., 30.

### A. Plaintiff raises the same claims about the lawfulness of the search as Mrs. Dorsey raised in her case.

Plaintiff's claims that police violated his Fourth Amendment Rights in searching his home were already raised in *Nikia Dorsey v. District of Columbia*, Case No. 1:15-cv-1462 by Mrs. Dorsey and her children. Pl.'s Am. Compl. EFC No. 12, attached as Exhibit A.  Plaintiff's claim arises out of the same events that occurred on the same day, in the same place, and involved the the same parties as Mrs. Dorsey's claim.  Even if Plaintiff pleads a few facts related to the search of Apartment 31 that were not known in Mrs. Dorsey's case, Plaintiff has still failed to bring a novel claim for purposes of issue preclusion because "preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but were not, in the first." *Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 452 (D.D.C. 2011).

Issue preclusion applies here even though Plaintiff was not a party in Mrs. Dorsey's case. Generally, issue preclusion may not be asserted against one who was not a party in the first case. *See Blonder-Tongue Lab. v. Univ. of Ill. Found.,* 402 U.S. 313, 329 (1971).  However, "a final

judgment on the merits of a cause of action binds the parties . . . and their privies." *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948). "The term privity signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit." *Gill & Duffus Services, Inc. v. A. M. Nural Islam*, 675 F.2d 404, 405 (D.C. Cir. 1982) (citing F. James & G. Hazard, Civil Procedure 576 (2d ed. 1977)). For two parties to be in privity, they must "claim an interest in the subject-matter affected by the judgment through or under one of the parties, i.e., either by inheritance, succession or purchase." *Gill & Duffus Services,* 675 F.2d, at 406; *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1409 (D.C. Cir. 1985) (quoting Comment, *Privity and Mutuality in the Doctrine of Res Judicata*, 35 Yale L.J. 607, 608 (1926)). Given this definition, Plaintiff was in privity with Mrs. Dorsey and any claim that was previously decided in her lawsuit should be barred here. At the time of the events giving rise to the case, Plaintiff and Mrs. Dorsey were married to each other, and resided in the same house.[3] Plaintiff and Mrs. Dorsey were also both present in the home when the police arrived, and both had their belongings searched.

**B. The court has already ruled the search was valid**

The court's ruling in *Nikia Dorsey v. DC* that police lawfully executed the search amounts to a final judgment on the merits of the claim. *Dorsey*, 234 F. Supp. 3d., at. 1. The U.S. District for the District of Columbia, "a court of competent jurisdiction," "actually and necessarily determined [the] prior case." *Martin*, 488 F.3d, at 454-55. As noted above, Plaintiff brings the same claim arising from the same events that Mrs. Dorsey brought in her case. "A party who once

---

[3] Federal cases in other circuits have found married couples in privity for purposes of res judicata. *See Bosonetto v. Town of Richmond*, 2013 U.S. Dist. LEXIS 76715, at *12 (D.N.H. May 31, 2013); *Napala v. Valley Isle Loan LLC*, 2010 U.S. Dist. LEXIS 116257, at *21 (D. Haw. Nov. 1, 2010). *See also Frick Co. v. Lindsay*, 27 F.2d 59, 61 (4th Cir. 1928) (finding husband and wife in privity both because they were married to each other and in business together).

has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to." *SBC Communs., Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (quoting Restatement (Second) of Judgments, at 6 (1982)).  Plaintiff had the opportunity to join his claim with Mrs. Dorsey's claim when the facts alleged in his complaint were being litigated the first time.  Plaintiff failed to do so and should not be given a do-over.

### C.  Precluding Plaintiff from bringing this claim does not amount to a basic unfairness.

In determining whether barring a litigant's claim for issue preclusion would amount to a "basic unfairness," courts look primarily to whether "the litigant lacked an incentive to litigate the points in the first trial." *Yamaha*, 961 F.2d, at 254.  Plaintiff had a high incentive to join Mrs. Dorsey's case.  The case related to events that happened to him in his own home.  Plaintiff could have easily joined the first case because it was brought by members of his own family.  In fact, Plaintiff's incentive should have been at its highest because the case was brought before he was convicted of possession of an unregistered firearm that resulted from the same search that Plaintiff, like Mrs. Dorsey before him, alleges was unconstitutional.

Courts will also sometimes consider whether the prior proceedings were "seriously defective." *Martin*, 488 F.3d, at 455 (*citing Blonder-Tongue Labs.,* 402 U.S., at 333).  Plaintiff does not allege the previous case was "procedurally defective."

### III.   Plaintiff's complaint is not proper under *Heck v. Humphrey.*

The court should dismiss Plaintiff's complaint because "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." *Heck v. Humphrey*, 512 U.S. 477, 486 (1993).

Plaintiff was convicted and sentenced to three years in prison for possession of an unregistered firearm and ammunition.  Pl.'s Compl. ¶¶ 24.  Police found the firearm and

ammunition in Plaintiff's house during a search that Plaintiff claims violated his Fourth Amendment rights. *Id.*, ¶¶ 28-30. Since Plaintiff claims MPD violated his constitutional rights, Plaintiff brought this action under 42 U.S.C. § 1983, even though Plaintiff failed to cite §1983 in his complaint. *Heck* holds that §1983 claims are not proper if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." 512 U.S., at 486.[4]

A finding that the search violated the Fourth Amendment would call the validity of his underlying conviction into question. Police would not have found the firearm had they not executed the search at 4701 Alabama Avenue, S.E., on June 7, 2013. If the entire search is invalid, then evidence police obtained from the search could not be used to prosecute Plaintiff. *See Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 391-92 (1920). A judgment for Plaintiff would call into question the validity of Plaintiff's conviction, and therefore, Plaintiff cannot bring this suit for damages under §1983. *Heck*, 512 U.S., at 486-87. Plaintiff may only bring a §1983 claim if he can show "the conviction . . . has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." *Id.*, at 487. Since Plaintiff has not so shown, he cannot bring a §1983 claim to recover civil damages from the District's or the officers' alleged Constitutional violation at this time.

Congress created the *Habeas Corpus* statute for prisoners seeking to challenge the fact or length of their confinement.[5] *Heck*, 512 U.S., at 482 (citing *Presier v. Rodriguez*, 411 U.S. 475,

---

[4] Like Plaintiff in this case, the *Heck* plaintiff was a convicted felon who sought damages for alleged constitutional violations at the hands of government agents that lead to his conviction. 512 U.S., at 389. Specifically, the plaintiff alleged government agents engaged in an "unlawful, unreasonable, and arbitrary investigation," "knowingly destroyed [exculpatory] evidence," and "caused an illegal . . . voice identification procedure to be used at trial." *Id.*
[5] Requiring prisoners to bring these claims through *Habeas* conserves federal judicial resources because an application for a writ of habeas corpus is only granted when "the applicant has exhausted the remedies available in the courts of the state, or that there is either an absence of available State corrective processes or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b); *Heck*, 512 U.S., at 481 fn3.

490 (1973)).  Prisoners may bring claims under §1983 only when seeking relief that would not automatically call their conviction into question.  *Skinner v. Switzer*, 562 U.S. 521, 533-34 (2011) (prisoner permitted to bring a postconviction claim for DNA testing under §1983 because conducting the test by itself may not show plaintiff's conviction was invalid); *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (prisoners may bring §1983 challenge to state parole procedures because they are not seeking an injunction ordering immediate or speedier release into the community); *Davis v. United States Sentencing Comm'n*, 716 F.3d 660, 662 (D.C. Cir. 2013) (prisoner may challenge discrepancy in sentences for crack and powder cocaine under §1983 because only if he succeeds on the merits will the sentencing reduction be made applicable, allowing him to seek discretionary reduction of his sentence under habeas).

In determining whether a prisoner complaint should be maintained under §1983 or the doctrine of *habeas corpus*, courts note that *habeas corpus* is not proper for claims with only a probabilistic impact on custody.  *Davis*, 716 F.3d, at 665.  Here, Plaintiff's claims have a certain, not a "probabilistic" impact on his custody because Plaintiff argues police should not have searched his home.  If police had not searched his home, plaintiff would not have been convicted and would not have served any time in prison.  Thus, Plaintiff must pursue this action through habeas.  It is irrelevant that Plaintiff has already served his entire sentence because release does not moot a *habeas corpus* claim.  *See e.g. Spencer v. Kemma*, 523 U.S. 1, 7-8 (1998).  A wrongful conviction has continuing collateral consequences.  *Id.*

### IV. Plaintiff Cannot Maintain His *Monell* Claim Against the District Because Plaintiff Has Failed to State A Constitutional Violation in The Issuance of or Execution of the Search Warrant.

A municipality's liability under §1983 is limited.  It cannot be held liable under 42 U.S.C § 1983 on the theory of *respondent superior*.  *See Monell v. Dep't of Soc. Serves. of City of N.Y.*,

436 U.S. 658, 691, 694 (1978); *Triplett v. District of Columbia*, 108 F. 3d 1450, 1453 (D.C. Cir. 1997); *Hunter v. District of Columbia*, 943 F. 2d 69, 74 (D.C. Cir. 1991); *Graham v. Davis*, 880 F. 2d 1414, 1421 (D.C. Cir. 1989). "[A] local government may not be substituted under § 1983 for an injury inflicted by its employees or agents. Instead it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 426 U.S. at 694. A prima facie case of a *Monell* claim requires both (1) a "predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation." *See Baker v. District of Columbia*, 326 F.3d 1302, 1305 (D.C. Cir. 2003) (citing *Collins v. City of Harked Heights, Tex.* 503 U.S. 115, 120 (1992)); *accord Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008); *Kona v. District of Columbia,* 971 F. Supp. 2d 74, 81 (D.D.C. 2013).

In this case, there was no constitutional violation in the issuance of or execution of the search warrant and, therefore, Plaintiff has failed to state a *Monell* claim against the District. Furthermore, if and when the individually named officers are served, because there was no constitutional violation, the same arguments will apply to the claims against them entitling them to qualified immunity.

### A. The warrant was supported by probable cause[6]

District courts accord "'great deference' to the issuing official's determination of probable cause" in reviewing an affidavit. *United States v. Johnson*, 437 F.3d 69, 71 (D.C. Cir. 2006); *see Illinois v. Gates,* 462 U.S. 213, 236-237 (1983). In determining whether an affidavit identifies probable cause to support a search warrant, a judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the

---

[6] Because whether a warrant is supported by probable cause is a question of law, Plaintiffs' allegations that the warrant was not supported by probable cause is not presumed true. *See Iqbal*, 556 U.S. at 679.

'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* at 238. (affidavit must set forth sufficient facts to induce a "reasonably prudent person" to believe evidence of a crime will be found).  Courts have routinely rejected hyper-technical, post hoc reviews of probable cause.  *See, e.g., Id.* at 236.  The Constitution requires only "the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act."  *Florida v. Harris,* 133 S. Ct. 1050, 1055 (2013) (internal quotations omitted) (alternation in original). While each fact standing alone may be insufficient, the combination of all the facts can establish probable cause.  *United States v. Gilliam*, 167 F.3d 628, 633 (D.C. Cir. 1999).  The reviewing court's duty is to "ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 238-39.

Here, there was ample evidence from which the magistrate judge could reach a conclusion that evidence of the Leesburg theft would be located at Mr. Taylor's residence, listed by several sources as 4701 Alabama Avenue, Southeast Washington, DC, Apartment # 31.

Multiple witnesses provided police with descriptions of the two suspects and the getaway vehicle involved in the Leesburg theft.  Affidavit at pg. 1.  The Leesburg theft was also captured on the store's video.  *Id*.  The getaway vehicle was a dark BMW sedan with license plate EE0674.  *Id*.  MPD officers witnessed a BMW sedan with tint and with the same license plates in the District; when MPD officers attempted to perform a traffic stop, with sirens and lights activated, the BMW sedan sped away.  *Id*.  When Officer Dempster was contacted by officers to investigate the BMW sedan further, he ran a series of checks and learned that: (1) the BMW sedan was titled to two persons, one of whom is Mr. Taylor; *id*., at 1-2; (2) Mr. Taylor was the BMW sedan's insurance holder; and, (3) Mr. Taylor was the BMW's primary driver and co-owner.  *Id.*, at 2.  After

determining that Mr. Taylor met the suspect description provided by witnesses of the Leesburg theft, Officer Dempster conducted a follow up investigation and records check in which several sources identified the Plaintiffs' address--4701 Alabama Avenue, Southeast Washington, DC, Apartment # 31--as the residence of Francis Taylor.  *Id.*  Officer Dempster explained that, based on his 13 plus years of law enforcement experience, individuals who commit thefts will store stolen property either in their residences or in vehicles which they have access or control, and that a suspect's clothing worn during the commission of a theft crime can also be found at the suspect's residences or in their vehicles.  *Id.*

There is no requirement for direct evidence linking the crime to the place to be searched for the issuance of a search warrant.  *See United States v. Thomas,* 989 F.2d 1252, 1255 (D.C. Cir 1993); *see also United States v. Hodge,* 246 F.3d 301, 306-07 (3rd Cir. 2001) (Probable cause is often inferred by "'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime.'") (quoting *United States v. Jones*, 28 V.I. 375, 994 F.2d 1051, 1056 (3d Cir. 1993)) (further citation omitted); *United States v. Angulo-Lopez,* 791 F.2d 1394, 1399 (9th Cir. 1986) (probable cause existed to search defendant's residence, based on reasonable inference that suspected drug dealer would keep evidence at home); *United States v. Cruz,* 785 F.2d 399, 406 (2d Cir. 1986)(probable cause found to search defendant's apartment, although no witness ever saw defendant or his associates use apartment).

In cases where affidavits have been found lacking, the affidavits entirely failed to link the suspect to the location to be searched, failed to explain why the affiant believed evidence of criminal activity would be found at the location, and failed to explain why evidence would be present long after officers received relevant information to support the affidavit.  *See United States*

*v. Savoy*, 889 F. Supp. 2d 78, 90 (D.C.C. 2012) (addressing search warrant affidavits so lacking in indicia of probable cause as to render official reliance on that affidavit unreasonable).

Here there is no basis for concluding that the information in the search warrant affidavit was insufficient to support probable cause because: (1) Police investigations and a records check resulted in several sources identifying Plaintiff's address as Francis Taylor's address, (2) there were only four days between the crime and the search, (3) the affidavit contained the type of information the Circuit Court has found sufficient to support probable cause, and (4) Plaintiffs' statistics are irrelevant and do not show that the affidavit was insufficient to support probable cause.

### B. Investigation and Records Checks indicated that Francis Taylor resided at Plaintiff's address.

Plaintiff alleges that the warrant application does not contain information linking the house to evidence of suspected criminal activity on the part of Mr. Taylor. Pl.'s Compl. ¶ 24. However, only two days after the Leesburg theft, Officer Dempster's records check on the BMW sedan revealed that Francis Taylor of 4701 Alabama Ave, Southeast, Washington, DC, Apt #31 held partial title to the BMW sedan, held insurance on the BMW sedan, and was the BMW sedan's primary driver and co-owner. *See* Affidavit, at 1. Then, four days prior to executing the search warrant, Officer Dempster confirmed that Francis Taylor's current address was 4701 Alabama Avenue, Southeast, Washington, DC, Apartment #31. *Id.*

There is no allegation that at the time of the search officers knew Francis Taylor did not maintain multiple residencies, especially given that the location to be searched was a multi-story apartment building with more than one unit. Moreover, a search conduced pursuant to a facially valid warrant is not undermined by a later determination that the warrant lacked a factual foundation. For instance, in *Rusell v. Quick*, police officers conducted a search of the plaintiff

residents' apartment pursuant to a search warrant that was later determined to have been issued for the wrong premises.   1994 U.S. Dist. LEXIS 10300, *2 (D.D.C. July 26, 1994).   The court dismissed plaintiffs' actions under 42 U.S.C. § 1983 holding that the search was valid because it was made pursuant to a facially valid search warrant even though the warrant was later determined to lack a factual foundation.  *Id.,* at *3.   The court further rejected plaintiffs' claim that officers should have become aware during the execution of the search that the warrant either contained a mistake or was not supported by probable cause; the court determined that the Supreme Court had rejected plaintiffs' argument in an analogous context.  *Id.* (citing *Baker v. McCollan*, 443 U.S. 137 (1979)) (no claim under § 1983 when, despite repeated claims of mistaken identity, person arrested pursuant to facially valid warrant turned out to be wrong individual).

Contrary to Plaintiffs' allegations, the warrant in this case shows a direct link between Mr. Taylor and the address searched.

## C.  There was no delay between the observation of criminal activity and issuance of the warrant.

Cases that justify finding no probable cause include affidavits that on their face show a great delay.  *See e.g Schoeneman v. United States,* 317 F.2d 173 (D.C. Cir. 1963) (finding a lack of probable cause on the date the search warrant was issued because of 107 days between the observation of criminal activity and application for the warrant); *United States v. Hopkins,* 128 F. Supp. 2d 1, 7 (D.D.C. 2000) (finding a lack of probable cause to search suspects' home where the officer represented that the suspects had been "arrested for gun violations twice in fifteen months").   The deficient affidavits in those cases bear no resemblance to the affidavit here, the affidavits were issued four days after the observation of criminal behavior, and the search was conducted the same day the affidavit was issued.  *See* Affidavit, at pg. 5.  Thus, there was no delay whatsoever that supports finding that no probable cause existed.

**D.     The affidavit contained the type of information the Circuit Court has found sufficient to support probable cause.**

The affidavit shows that the Leesburg theft involved stolen merchandise, that the suspects and their clothing were identified by witnesses and caught on camera, and that the suspects had time (approximately four days) to hide both the stolen merchandise and their clothing in their residences. *See* Affidavit, at 1; *United States v. Duran*, 884 F. Supp. 552, 555 (D.D.C. 1995) (citing *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)) (cash, clothing, and firearms related to robbery were "the types of evidence likely to be kept in a suspect's residence"). One of the suspects, Mr. Taylor, maintained title and an insurance policy to the BMW sedan and was listed as residing at 4701 Alabama Ave, Southeast, Washington DC. *Id.*

The affidavit contains a physical description of the premises to be searched: "a multi-story, light brownish brick apartment building," *id.* at pg. 1, "Apartment #31 is on the third (top) floor and is the first apartment on the left," *id,* "the apartment's door is burgundy in color had has gold in color numerals in the upper center 31.'" *Id.*

**V.     Plaintiff's Complaint Fails to Establish a Constitutional violation**

Plaintiff's complaint should be dismissed because there is no predicate constitutional violation, as discussed *supra*. However, Plaintiffs' complaint also fails to establish that a custom or policy of the District caused the violation. Proof of a single incident of alleged unconstitutional activity is not enough to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy. *Mary Bonaccorsy v. District of Columbia*, 685 F. Supp. 2d 18 (D.D.C. 2010) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)); *see also Byrd v. District. of Columbia*, 297 F. Supp. 2d 136, 139 (D.D.C. 2003) (citing *Parker v. District of Columbia*, 850 F.2d 708, 711-12 (D.C. Cir. 1988)).

Plaintiff's complaint makes only the barest legal allegation of a §1983 claim, without the factual basis necessary to bring the claim out of the realm of boilerplate conclusions and into the realm of specific allegations sufficiently plausible to resist a motion to dismiss. *See Iqbal,* at 678. Plaintiffs alleges that the District trains its officers to include in search warrant applications of training and experience that are insufficient in applications for warrants. Pl.'s Compl. ¶ 30. Plaintiff also makes sweeping general accusations about MPD's practices in executing search warrants. For example, Plaintiff claims MPD "failed to properly train and discipline an officer who repeatedly [prepares] and [executes] legally invalid search warrants;" id., at ¶ 26, and that the officers' "unreasonable, wanton and reckless, seizure and searches [reflect] a pattern and practice of MPD officers in several hundreds of similar search warrant raids." *Id.* at ¶ 30. There are no facts in the complaint to support any of these sweeping and outrageous assertions. These allegations alone are not enough to withstand *Monell* scrutiny and the District should be dismissed from this suit with prejudice.

## VI. Plaintiff Has Failed to Plead Enough Facts to Show Individual Officers Violated His Constitutional Rights in Failing to Knock and Announce and Seizing His Electronic Devices.

Since there is no *respondeat superior* liability under §1983, meaning each Defendant can only be held liable for his own individual conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[V]icarious liability is inapplicable to . . . § 1983 suits ..."); *Elkins v District of Columbia*, 690 F. 3d 554, 564 (D.C. Cir. 2001); *Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C. Cir. 2004) ("[T]here can be no *respondeat superior* liability under Section1983."). Because there is no *respondiat superior* liability, Lt. Pulliam, Dets. Smith and Campanale, and Officers Dempster,

Lauderdale, Shiffer, Ranck, Deoleo, and Vigil are entitled to know the specific conduct Plaintiff claims each of them engaged in that would make them liable to Plaintiff.[7]

Plaintiff states "defendant MPD officers executing said warrant failed to knock and announce their presence," Pl.'s Compl. ¶ 29; and MPD invaded his privacy "by seizing his electronic devices which contained personal and intimate information," *Id*., ¶ 30.  Plaintiff does not state which of the named officers were responsible for knocking an announcing or which one seized the electronic devices.   Therefore, Plaintiff's claim that generic officers violated his constitutional rights when they failed to knock and announce and seized his electronic devices should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claim against the District with prejudice.   In the alternative, the Court should grant summary judgment in favor of the District.

Dated: March 8, 2019                    Respectfully Submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

/s/David A. Jackson _____
DAVID A. JACKSON [471535]
Assistant Attorney General
Suite 630 South

---

[7] As stated above, Plaintiff has only served Officers Lauderdale and Shiffer.  Undersigned counsel only represents the officers who have been served, and therefore does not represent Lt. Pulliam; Dets. Smith and Campanale; and Officers Dempster, Ranck, Deoleo, and Vigil at this time.  However, the arguments addressed in this motion apply to all of the officers regardless of whether they have been served.

441 Fourth Street, NW
Washington, D.C.  20001
(202) 724-6618
(202) 741-8999 (fax)
davida.jackson@dc.gov

/s/ *John J. Bardo*
JOHN J. BARDO*
Assistant Attorney General
441 4th Street, NW, Suite 630 South
Washington, DC  20001
202-724-6534
John.Bardo@dc.gov

*Admitted to practice only in the Commonwealth of Virginia.  Practicing in the District of Columbia under the direct supervision of Michael Addo, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————————
                                            )
JAMES DORSEY,                               )
                                            )
              Plaintiff,                     )
                                            )
       v.                                   )        C. A. No. 19-cv-191 (RMC)
                                            )
DISTRICT OF COLUMBIA, *et al.*,             )
                                            )
              Defendants.                    )
—————————————————————————   )

## **ORDER**

Upon consideration of Defendant the District of Columbia's Motion to Dismiss or in the alternative for Summary Judgment as to all claims against it, the entire record, and for good cause shown, it is this _____ day of _____, 2019,

ORDERED, that Defendant's Motion is GRANTED, and it is further

ORDERED, that Plaintiff's claims against the District of Columbia are hereby DISMISSED WITH PREJUDICE.

_____
HON. ROSEMARY M. COLLYER
UNITED STATES DISTRICT COURT JUDGE

Copies to: All Counsel of Record (via ECF)