# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES DORSEY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 19-191 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In June of 2013, officers of the District of Columbia Metropolitan Police Department (MPD) attempted a traffic stop on a BMW sedan. The vehicle fled but MPD's subsequent investigation revealed a possible connection between the car and a recent theft in Virginia. Believing it probable that the owner of the car had hidden the stolen items in his residence, MPD officers filed for a warrant to search the residence associated with the car's insurance. As it turns out, the house named on the insurance policy belonged not to the insurance registrant, but to Nika Dorsey (the plaintiff's wife) and her family. Nonetheless, the search turned up a laptop, four cell phones, and a revolver—all of which MPD seized. James Dorsey, the plaintiff here, was subsequently convicted and sentenced to three years of incarceration for possessing the firearm without proper registration. Prior to this suit, Nika Dorsey brought and settled claims against the District of Columbia that the search violated her Fourth Amendment rights and those of her minor children. Now, Mr. Dorsey brings his own suit. As relevant, he alleges that the search of the home and seizure of the devices was improper. The District and the officers move to dismiss the claims against them, or in the alternative for

1

summary judgment. For the reasons stated below, the Court will grant their motion for summary judgment.

## I. FACTS

In June of 2013, MPD officers attempted to execute a stop on a dark BMW sedan and the vehicle fled. Def.'s Mot. to Dismiss Pl.'s Compl. or in the Alternative for Summ. J. (Mot.) [Dkt. 12] at 8-10.[1] The officers communicated the BMW's description and license plate number to Officer William Dempster who conducted a database search for the fleeing sedan. *Id*. at 10. Through this search Officer Dempster learned of a recent theft—a few days earlier, two people had stolen nine handbags from a Burberry store in Virginia and fled in a car matching the BMW's description. *See Dorsey v. United States*, 234 F. Supp. 3d 1, 5 (D.D.C. 2017); Mot. at 9. Thinking he had a lead on the theft, Officer Dempster compiled a search warrant for the address listed on the car's insurance registration. Mot. at 9-10. In support of the warrant application, Officer Dempster, as affiant, put forth as probable cause that "[i]ndividuals who commit thefts will store the stolen property at their residences or in vehicles which they have access and control until such time they can pawn, sell, trade or use the item to their own benefit." Ex. B, Mot., Aff. in Supp. of an Appl. for a Search Warrant (Warrant App.) [Dkt. 12-1] at 27. The warrant was granted by a D.C. Superior Court Judge, and MPD officers executed a search on the address. Mot. at 3.

However, the residence did not belong to the BMW's registrant, and was instead home to Mr. Dorsey, his wife, his wife's mother, and his wife's two children. Mot. at 8. As the Court explained in Nika Dorsey's suit:

---

[1] When citing to record documents, the Court uses the electronic case filing (ECF) page number, not that of the original document.

> Without knocking or announcing their presence, the MPD officers breached the apartment's door, trained weapons on the family inside, detained them, and handcuffed everyone except three-year-old J.C., who was terrified and screamed and cried. The officers refused to release Ms. Dorsey from handcuffs at any time during the search so that she could comfort J.C. As part of their search, the officers confiscated all cell phones and a laptop computer. After two hours of searching, the officers left without any purses.

*Dorsey*, 234 F. Supp. 3d at 6. Mr. Dorsey was later convicted and sentenced for the unregistered possession of a firearm located during the search. Mot. at 9. His wife previously brought suit in this Court against the MPD to vindicate her and her minor childrens' rights, which resulted in a settlement. *See generally Dorsey*, 234 F. Supp. 3d at 1.

Now, Mr. Dorsey advances his own claims. *See generally* Compl. [Dkt. 1-1]. Although the Complaint is not a model of cogency, it alleges that Defendants District of Columbia, Officer Dempster, and six other John Doe officers (collectively, District Defendants) engaged in activity that violated the Fourth Amendment as a matter of pattern and policy. *Id*. ¶ 28.[2, 3] Specifically, Mr. Dorsey alleges that the warrant application lacked evidence that would convince a reasonable police officer that the seized phone and computer would contain evidence relevant to the Burberry theft. *Id*. ¶ 10. He also alleges that the warrant application relied on overly broad assertions by Officer Dempster regarding the habits of thieves, and therefore that the warrant was improper. Finally, he alleges that the District trained its officers to submit such insufficient affidavits. *Id.* While the Complaint does not set forth a model 42 U.S.C. § 1983 claim, it does sound in the same tenor and the Court evaluates the claim as setting forth a § 1983

---

[2] The Complaint also alleges that these policies disparately impact poor families of color; however as it does not allege the requisite discriminatory intent, this Court does not take the complaint as alleging an equal protection violation.

[3] The Complaint also sets forth allegations against Mr. Dorsey's criminal defense attorney. *See* Compl. ¶ 26. The attorney is not party to the instant motion, *see* Mot., and the allegations against him are not considered by this Memorandum Opinion.

3

claim against the District and MPD officers for violating Mr. Dorsey's Fourth Amendment protections vis-à-vis the search of the apartment and the seizure of the electronics.

## II.     PROCEDURAL HISTORY

Mr. Dorsey first filed this case in the Superior Court of the District of Columbia. *James Dorsey v. District of Columbia*, C.A. No. 2018 CA 006146 B (D.C. Aug. 27, 2018).  The District Defendants removed the action to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1446(b)(2)(A).  *See* Notice of Removal of a Civil Action [Dkt. 1] at 2. The District Defendants then moved for dismissal or, in the alternative, for summary judgment; specifically, arguing that this case is improper under *Heck v. Humphrey*, 512 U.S. 477 (1994) and that the statute of limitations ran prior to filing.  *See generally* Mot.[4]  The motion is ripe for review.[5]

## III.    LEGAL STANDARD

Motions to dismiss are properly raised in a response to a complaint under Federal Rule of Civil Procedure 12.  Fed. R. Civ. P 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint is facially plausible when it pleads facts that allow a court to "draw the reasonable inference that the defendant is liable for the misconduct

---

[4] District Defendants also argue that their motion should be granted because the complaint has failed to allege a constitutional violation per *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the complaint is insufficient to establish a constitutional violation on its face, and any allegation that the search was improper is barred by issue preclusion.  However, as the court finds enough reason to grant summary judgment without considering these arguments they will not be addressed.

[5] *See* Mot.; Pl.'s Opp'n to the Defs.[sic] Mot. to Dismiss (Opp'n) [Dkt. 15]; Def. District of Columbia's Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss (Reply) [Dkt. 18].

alleged." *Id.*. Although the standard is deferential, it "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and is unsatisfied when a complaint pleads facts that are "'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 570). While courts considering Rule 12(b)(6) motions accept as true the factual allegations in a complaint, they are not forced to accept the plaintiff's conclusory legal determinations. *See id*.

Alternatively, motions for summary judgment should be granted when the moving party demonstrates that there is no genuine dispute of a material fact. Fed. R. Civ. P. 56(a). A party can move for summary judgment at any time before thirty days after the close of discovery. Fed. R. Civ. P. 56(b). The moving party has the burden of proving that there is no material dispute of fact, and under our Local Rules can do so by providing a list of material facts not in dispute which are to be taken as true unless controverted by the nonmoving party in their opposition filing. LCvR 7(h)(1). Once such facts are established, courts rely on them to determine whether the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[W]here a defendant has moved for summary judgment under Rule 56 as an alternative to dismissal under Rule 12(b)(6), 'the decision regarding whether or not to treat motion to dismiss as one for summary judgment is committed to the sound discretion of the trial court.'" *Tyson v. Brennan*, 306 F. Supp. 3d 365, 369-70 (D.D.C. 2017) (quoting *Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 192 (D.D.C. 2016)).

## IV.     ANALYSIS

### A.     Is Mr. Dorsey's Claim Stale?

The District Defendants contend that the statute of limitations ran before Mr. Dorsey filed this action and that they are entitled to judgment as a matter of law.

When addressing "Congress' failure to provide a specific statute of limitations to govern § 1983 actions," *Owens v. Okure*, 488 U.S. 235, 239 (1989), the Supreme Court held that

"courts considering § 1983 claims should borrow the [state] general or residual statute for personal injury actions." *Id.* at 250. The residual statute of limitations in the District of Columbia is three years, *see* D.C. Code § 12-301(8), which this Court adopts for purposes of the present action.

Per federal law, claim accrual occurs "when the plaintiff has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quotation marks and citations omitted). A "Fourth Amendment search and seizure claim is analogous to false arrest," *Wormley v. United States*, 601 F. Supp. 2d 27, 35 (D.D.C. 2009), and because constitutional claims for false arrest "'consist[] of detention without legal process,'" they accrue "'once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges.'" *Hampton v. Comey*, No. 14-1607, 2016 WL 471277, at *11 n.7 (D.D.C. Feb. 8, 2016) (quoting *Wallace*, 549 U.S. at 389).

Mr. Dorsey's claim accrued on June 11, 2013, when a Magistrate Judge in D.C. Superior Court made a probable cause finding and bound Mr. Dorsey over to the grand jury. *See* Ex. C, Mot., Dorsey Superior Court Docket [Dkt. 12-1] at 53.[6] Thus, without tolling, Mr. Dorsey had until June 12, 2016 to bring his suit.

State law guides the "closely related questions of tolling and application." *Wilson v. Garcia*, 471 U.S. 261, 269 (1985), *superseded by statute*, 28 U.S.C. § 1658, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Here, D.C. Code § 12-302(a) tolls the statutory period when the person is imprisoned at the time the right of action accrues. Mr. Dorsey was incarcerated from the date of his arrest on June 7, 2013 until July 9, 2013, when he

---

[6] The government posits that Mr. Dorsey's claim accrued upon his arrest on June 7, 2013. However, this is at odds with the Supreme Court's precedent in *Wallace v. Kato*.

was released from the D.C. Jail to a halfway house. Therefore, the accrual date is tolled until at least July 9, 2013 when he was released to a halfway house, resulting in a deadline to file suit of July 10, 2016.

Mr. Dorsey was confined to the halfway house from July 9, 2013 until October 23, 2013, when he was arraigned on a grand jury indictment and released on bond. While "imprisonment" is not specifically defined, "'[t]here can be no doubt that the word imprisonment is used in this section in its plain, ordinary meaning. Imprisonment is the act of putting or confining a man in prison; the restraint of a man's liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion.'" *Jones v. Kirchner*, 835 F.3d 74, 82 (D.C. Cir. 2016) (quoting *Rose v. Washington Times Co.*, 23 F.2d 993 (D.C. Cir. 1928)).

While there does not appear to be any authority on whether a defendant's commitment to a halfway house counts as imprisonment for purposes of § 12-302(a), halfway houses are "but a substitute for a more structured environment of the minimum security facility from which [the defendant] was transferred." *Armstead v. United States*, 310 A.2d 255, 256 (D.C. 1973). Furthermore, halfway houses are considered a penal institution elsewhere in the D.C. Code. *See United States v. Venable*, 316 A.2d 857, 858 (D.C. 1974) (finding defendant who absconded from a halfway house was properly charged with escape from custody). Judicial notice is taken that this District Court has recently been the recipient of numerous federal charges of escape by those who have absconded from the D.C. halfway house.

Although D.C. law is unclear as to whether being committed to a halfway house constitutes incarceration for purposes of § 12-302(a), this Court finds that it does so. First, as a semantic matter, Mr. Dorsey was still in the "custody" at the halfway house. *Armstead*, 310 A.2d at 256 (finding "Appellant remained in the custody of the Department [of Corrections] at

7

all times" while confined at a halfway house). Second, Mr. Dorsey's movement was constrained while in the halfway house and, as "inmates may have difficulty establishing the validity of legal claims while imprisoned," *Brown v. Jonz*, 572 A.2d 455, 457 n.7 (D.C. 1990) (citing *Hardin v. Straub*, 490 U.S. 536 (1989)), Mr. Dorsey's ability to investigate his claims may well have been diminished. Therefore, the Court will toll the statute of limitations for the period Mr. Dorsey was in the halfway house, bringing Mr. Dorsey's deadline to file suit to October 24, 2016.

Mr. Dorsey argues that his incarceration for gun possession also tolled the statute of limitations for this suit challenging the search that discovered the gun. However, once a defendant is released—whether on parole or without restriction—the disability is lifted and the statute of limitations begins to run. Even if a defendant is soon recommitted, "'the limitations period is tolled only for that period of imprisonment during which the [tort] occurs, not during subsequent periods of incarceration. This is reasonable because once a prisoner is released . . . nothing prevents the plaintiff from commencing his action at that time.'" *District of Columbia v. Tinker*, 691 A.2d 57, 65 (D.C. 1997) (quoting *Hamil v. Vidal*, 488 N.E.2d 1024, 1026 (Ill. 1985)). Therefore, because the instant claim concerning his Fourth Amendment rights accrued before Mr. Dorsey began to serve time on his conviction for gun possession (April 24, 2015-July 17, 2017) the statute of limitations will not be further tolled.[7]

The record shows that Mr. Dorsey filed his claim in D.C. Superior Court on August 27, 2018—well after the October 24, 2016 deadline. Therefore, his claim has expired.

---

[7] The District asserts, incorrectly, that Mr. Dorsey was sentenced on April 24, 2016. Mot. at 13. While Mr. Dorsey does not dispute this fact, Opp'n at 3, the Superior Court docket, submitted by the District, shows that Mr. Dorsey was sentenced and incarcerated on April 24, 2015. Dorsey Superior Court Docket at 38; *see also* Ex. C, Mot., Dorsey Superior Court Sentence [Dkt. 12-1] at 57.

### B. Is Mr. Dorsey's Claim Improper Under *Heck v. Humphrey*?

In addition to the statute of limitations, the District seeks summary judgment on its argument that Mr. Dorsey's Fourth Amendment claims would necessarily implicate the validity of his criminal conviction and thus are improper under *Heck v. Humphrey*, 512 U.S. 477. Section 1983 is not available to a prisoner-plaintiff who challenges the "fact or duration of his confinement," even if the claim itself otherwise falls within the scope of the statute. *Id.* at 482. This is because "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486. Even when a plaintiff seeks only compensatory damages, this principle forbids the suit if "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction." *Id* at 481-82. Accordingly, courts have regularly rejected claims that would invalidate a conviction due to questionable investigative methods or the destruction of exculpatory evidence. *See, e.g.*, *id*. at 479-80; *Harris v. Fulwood*, 611 Fed. App'x 1, 2 (D.C. Cir. 2015) (denying plaintiff's motion for certiorari on the grounds that a "judgment in his favor would necessarily imply the invalidity of the parole revocation").

The Complaint alleges that the June 7, 2013 search was precipitated by a legally invalid search warrant and that the subsequent search and seizures violated Mr. Dorsey's Fourth Amendment rights. *See generally* Compl. The gravamen of his Complaint—that an improper search warrant proximately caused his conviction and incarceration—proves fatal to his civil constitutional claim. If there were an improper search vis-à-vis Mr. Dorsey, the fruits of that search, the gun, would have been inadmissible against him at trial. Whether Ms. Dorsey and her minor children had separate claims arising from the same events is irrelevant. Mr. Dorsey

9

cannot use this civil lawsuit, in theory to collect money damages but necessarily to challenge the legitimacy of his conviction, "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489.

Seeming to acknowledge the weakness of his claim, Mr. Dorsey asks the Court to stay this case until his criminal appeal is completed. *See* Opp'n at 3. However, the Court is unaware of any pending appeal, as the D.C. Court of Appeals upheld his conviction in 2017. *See Dorsey v. United States*, 154 A.3d 106 (D.C. 2017). Notwithstanding its impropriety today, it is of course true that if Mr. Dorsey's conviction is pardoned, vacated, or overturned, his § 1983 claim would no longer be improper under *Heck*. However, at present, all of Mr. Dorsey's claims against the District Defendants effectively challenge the search warrant, its return, and Mr. Dorsey's conviction. *Heck v. Humphrey* compels summary judgment in favor of the District Defendants.

## V. CONCLUSION

Because Mr. Dorsey's claims were not timely raised and necessarily challenge the evidence behind his criminal conviction, this § 1983 civil action cannot proceed. This Court will grant the District Defendants' Motion for Summary Judgment. A memorializing Order accompanies this Memorandum Opinion.

Date: August 8, 2019

ROSEMARY M. COLLYER
United States District Judge